NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EDWARD CUNNINGHAM, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> WARDEN R. GROUNDS, ) <br> ) <br> Respondent. ) <br> ) | No. C 11-5576 LHK (PR) <br><br> ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

Petitioner, a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the petition should not be granted. Respondent has filed an answer, and Petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented, and DENIES the petition.

**PROCEDURAL HISTORY**

On May 30, 2003, a jury found Petitioner guilty of continuous sexual abuse of a child under the age of 14. (Resp. Memo. P & A at 1.) The trial court sentenced Petitioner to an aggravated term of sixteen years in state prison. (*Id.*) In May 2005, the California Court of Appeal affirmed the judgment. (Resp. Ex. 9.) On June 29, 2005, the California Supreme Court denied Petitioner's petition for review. (Resp. Ex. 12 at 1.) The United States Supreme Court

granted certiorari, found that California's sentencing scheme violated the Sixth Amendment, and remanded the case for further proceedings. *Cunningham v. California*, 549 U.S. 270 (2007). On November 6, 2008, the trial court re-sentenced Petitioner to the upper term of 16 years. (Resp. Ex. 13 at 2.) On January 25, 2010, the state appellate court affirmed the sentence. (Resp. Ex. 13.) On March 30, 2010, the California Supreme Court denied review. (Resp. Ex. 15.)

On November 16, 2011, Petitioner filed the underlying federal petition for writ of habeas corpus.

## BACKGROUND

<u>Victim's Testimony</u>

The victim, referred to at trial and herein as John Doe, is appellant's son. Doe, born in August 1989, testified that he lived with his mother, Wanda, for the first 10 years of his life. In December 1999, when Doe was 10 years old, he went to live with appellant, appellant's girlfriend, Latasha, appellant's and Latasha's baby, and Latasha's young nephew.

Doe admitted that prior to moving in with appellant, Doe falsely accused his stepfather of beating him, resulting in scars on his back, because he wanted to live with appellant and did not like his new stepfather. After appellant took Doe to the hospital Doe admitted he had lied. Doe also admitted that when he was eight years old he called the telephone number for Boys' Town and falsely reported that there was no food in his mother's house and she did not provide him with enough attention. The police and child protective services investigated the call and found Doe was healthy and had ample food at his house.

Doe testified that in January 2000, shortly after he moved in with appellant, appellant began forcibly sodomizing him and forcing him to orally copulate appellant. Sometimes while being sodomized by appellant, Doe screamed for help because it hurt "very bad" and appellant put his hand over Doe's mouth to stop Doe from screaming. The acts occurred in appellant's bedroom, the living room, the bathroom and the shower. Sometimes appellant molested Doe when he was angry with Doe. Because appellant threatened to kill Doe if he told anyone about the abuse, Doe was afraid of appellant and did not tell anyone while living with him. In December 2000, Doe first told his younger cousin, Brittany, about appellant's abuse in a note while visiting her when appellant was out of town. Before giving her the note Doe said "I have to tell you," but did not want to say it aloud. The note said, "my dad is hu[m]ping me." Thereafter Brittany showed the note to her mother, Karla, who then questioned Doe as to what it meant. Doe told Karla about appellant's repeated incidents of sodomy and forcing Doe to orally copulate him. After Karla told her husband, Gerrell, about Doe's allegations, Gerrell talked to Doe, then took him to appellant's house for a family meeting. While there, as Doe was packing his clothes, appellant confronted him while they were alone and said, "In a week you better say you are lying or else I am going to fuck you up."

> After Doe reported appellant's abuse to Wanda and his stepfather, Wanda took him to the hospital. The pediatrician who performed a sexual assault examination on Doe testified that the examination revealed no trauma to Doe's anus, consistent with most postsodomy examinations. However, the doctor said that Doe's accounts of how he felt physically during and after being sodomized and orally copulating appellant were consistent with how children report such incidents.
>
> On January 4, 2001, Doe was interviewed by San Pablo Police Officer Jeff Palmieri. Doe told Palmieri that appellant sexually abused him numerous times beginning shortly after he moved in with appellant. On January 8, Kerry O'Malley of the Children's Interview Center (CIC) conducted a videotaped sexual assault interview of Doe. [FN2] Doe's statements during the CIC interview were consistent with his earlier statements to Palmieri.
>
> FN2. A videotape of the CIC interview was played for the jury and admitted into evidence.
>
> On January 5, 2001, appellant agreed to a videotaped interview by Officer Palmieri and Contra Costa District Attorney's Office Inspector Ted Todd. [FN3] At the beginning of the interview appellant adamantly denied any type of sexual touching of Doe. As the questioning ensued, appellant became more forthcoming in his responses. After two or three hours, appellant admitted that Doe's mouth did make contact with appellant's penis for five seconds while in the shower on one occasion. Appellant also said that Doe was a liar and was manipulative and later said Doe was a homosexual and "can't quit the homosexual behavior."
>
> FN3. The videotaped interview was played for the jury.
>
> Defense
>
> Testifying in his own defense, appellant denied ever molesting Doe or any child. He also denied ever threatening to kill Doe or "fuck [him] up." Appellant testified that prior to coming to live with him, Doe had been expelled from school due to behavior problems and was not doing his homework. Other defense witnesses testified that Doe had a history of lying and his allegations against appellant were fabricated because he was unhappy about appellant's requirements regarding chores and homework.

(Resp. Ex. 9 at 1-3.)

## DISCUSSION

A.  Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

B.   Analysis

In the petition, Petitioner claims that: (1) the trial court committed prejudicial error when it permitted the prosecution to introduce unreliable hearsay statements, and (2) the trial court violated Petitioner's right to a jury trial when it improperly imposed the upper-term sentence based on its own fact-finding.

      1.   Admission of hearsay statements

Petitioner claims that the trial court improperly admitted the victim's previous inculpatory statements, including a note to the victim's cousin and the victim's videotaped interview at the Children's Interview Center.

To the extent Petitioner is attacking the introduction of these statements as violating the Confrontation Clause, the claim is without merit. The Confrontation Clause of the Sixth

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.11\Cunningham576hcden.wpd    4

Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). A primary interest secured by the Confrontation Clause is the right of cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). However, "the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Owens*, 484 U.S. 554, 559 (1988) (emphasis in original) (quoting *Kentucky v. Sincer*, 482 U.S. 730, 739 (1987)).

The Confrontation Clause applies to all "testimonial" statements. *See Crawford v. Washington*, 541 U.S. 36, 50-51 (2004). "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. at 51 (citations and quotation marks omitted). The Confrontation Clause applies not only to in-court testimony but also to out-of-court statements introduced at trial, i.e., "testimonial hearsay," regardless of the admissibility of the statements under state laws of evidence. *Id.* at 50-51. Out-of-court statements by witnesses that are testimonial hearsay are barred under the Confrontation Clause unless: (1) the witnesses are unavailable, and (2) the defendants had a prior opportunity to cross-examine the witnesses. *Id.* at 59. However, case law is clear that the Confrontation Clause does not bar the admission of testimonial hearsay when the declarant appears for cross-examination at trial. *Id.* at 59 n.9 (citing *California v. Green*, 399 U.S. 149, 162 (1970)). Here, the victim was available for cross-examination and testified at trial. Accordingly, admission of these hearsay statements did not violate the Confrontation Clause.

To the extent Petitioner argues that the admission of these statements violated the Due Process Clause, the claim also fails. The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.

1986). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)). Moreover, a failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *See Henry*, 197 F.3d at 1031.

The California Court of Appeal considered and rejected Petitioner's claim. It noted that California Evidence Code Section 1360 created a hearsay exception for a statement made by a victim when under the age of 12, and describing an act of abuse or neglect performed on that child by another, provided certain conditions are met. (Resp. Ex. 9 at 4.) The state appellate court concluded that the trial court did not abuse its discretion in determining that the statements were reliable and admissible. (*Id.* at 9-11.)

Petitioner mainly argues that the trial court's admission of these statements was erroneous because the trial court's reliability determination was made in error. However, Petitioner has failed to show how the admission of these statements was "fundamentally unfair." *Cf. Brodit v. Cambra*, 350 F.3d 985, 991 (9th Cir. 2003) (admission of evidence under California Evidence Code Section 1360 did not clearly offend defendant's due process rights). Moreover, Petitioner's entitlement to habeas relief on this ground does not turn on whether a state evidentiary law has been violated, but whether the admission of the evidence "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Here, Petitioner cannot demonstrate that admission of the victim's out-of-court inculpatory statements was fundamentally unfair. The statements were consistent with his testimony at trial (Resp. Ex 1, RT 53-75), as well as before the grand jury. (Resp. Ex. 2, CT 70-107.) In addition, Petitioner's sister-in-law and Detective Palmieri corroborated the victim's statements in their testimonies at trial. (Resp. Ex. 1, RT 204-09; Resp. Ex. 2, RT 269-75.) Finally, the jury was instructed that a determination of guilt regarding sexual crimes does not

require the victim's testimony to be corroborated by other evidence. *See* CALJIC No. 10.60. Accordingly, Petitioner has failed to show that admission of the victim's previous inculpatory statements so infected the entire trial that the resulting conviction violates due process. The state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law. 28 U.S.C. § 2244(d).

    2.    <u>Upper-term sentence</u>

Petitioner claims that the trial court's re-imposition of a sentence at the upper term of 16 years violated his right to a jury trial because the sentence was based on facts not found by a jury nor beyond a reasonable doubt.

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings. *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004); *see, e.g.*, *Cunningham v. California*, 549 U.S. 270, 273 (2007) (finding the Court's decisions from *Apprendi* to *Booker* point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum; therefore, California's determinate sentencing law violates the Sixth Amendment because it authorizes the judge, not the jury, to find the facts permitting an upper term sentence).

In *Cunningham*, the U.S. Supreme Court held that California's determinate sentencing law ("DSL") – which used a sentencing triad of lower/middle/upper terms – violated the Sixth Amendment because it allowed the sentencing court to impose an upper term sentence based on aggravating facts that it found to exist by a preponderance of the evidence. *See Cunningham*, 549 U.S. at 288-89. Concluding that the middle term was the relevant statutory maximum, and noting that aggravating facts were found by a judge and not the jury, the Supreme Court held that California's DSL violated the rule set out in *Apprendi*. *Id.* at 288-89, 293.

On March 30, 2007, in response to the Supreme Court's suggestion in *Cunningham* that California could cure any constitutional defect in the determinate sentencing statute, Cal. Penal Code § 1170(b), by leaving the selection of an appropriate sentence to the judge's discretion, *Cunningham*, 549 U.S. at 293-94, the California Legislature enacted Senate Bill 40, which amended section 1170(b). *See* Cal. Stats. 2007, ch.3 (S.B.40), § 3, eff. Mar. 30, 2007; *Butler v. Curry*, 528 F.3d 624, 630 n.5 (9th Cir. 2008) (acknowledging section 1170(b)'s amendment). Under amended section 1170(b), a trial court still exercises its discretion in selecting a sentence within the upper, middle, or lower terms, but no additional fact finding is required to impose an upper or lower term. *See Butler*, 528 F.3d at 652 n.20 ("imposition of the lower, middle, or upper term is now discretionary and does not depend on the finding of any aggravating factors"); *accord People v. Sandoval*, 41 Cal. 4th 825, 843-45 (2007).

Here, the trial court re-sentenced Petitioner on November 6, 2008 – after the effective date of the amendment to section 1170(b). The applicable law at sentencing therefore was California's amended sentencing scheme, which this Court finds complies with *Cunningham* as applied to Petitioner. Specifically, under amended section 1170(b), the trial court was not required to find any additional fact in order to impose the upper term sentence. In fact, because the upper term at the time of Petitioner's sentencing was the "statutory maximum" within the meaning of *Cunningham*, the trial court was permitted to rely on facts in addition to those found by the jury in the exercise of its discretion. *See United States v. Booker*, 543 U.S. 220, 233 (2005) ("[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.").

In view of California's decision to follow *Cunningham*'s suggested sentencing scheme in order to avoid a Sixth Amendment violation, the California Supreme Court's rejection of Petitioner's Sixth Amendment claim under such sentencing scheme cannot be said to be contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d); *accord McCowan v. Marshall*, No. 10-0473 CRB, 2001 WL 1544490, at *2-3 (N.D. Cal. April 25, 2011) (upholding upper term sentence imposed after effective date of DSL

1 amendment); *Espinoza Bermudez v. Clark*, No. 09-275-OWW-SMS, 2010 WL 2089670, at *7
2 (E.D. Cal. May 21, 2010) (same). Put simply, Petitioner has not shown that there was "no
3 reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784
4 (2011).

## CONCLUSION

Petitioner's petition for writ of habeas corpus is DENIED.

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: 5/16/13

LUCY H. KOH
United States District Judge

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.11\Cunningham576hcden.wpd
9